**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-01357-WJM

CARRIE A. WHATLEY,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security

    Defendant.

---

**ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE**

---

    This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Carrie A. Whatley challenges the final decision of Defendant, the Commissioner of Social Security, denying her application for social security disability benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). Before the Court is Plaintiff's appeal of the denial of benefits.

## I. LEGAL STANDARD

    The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a

preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## II. BACKGROUND

Plaintiff Carrie Whatley was born in 1978. She has a bachelor's degree in English and is married. The majority of Plaintiff's work experience is administrative in nature. Amongst other things, Plaintiff has been a court clerk for the State of Colorado, an office clerk for a school district, a case manager at a law firm, and a personnel clerk. (Rec. 40-45.)

### A. Plaintiff's Medical Conditions

Following knee surgery in 2006, Plaintiff was diagnosed with reflex sympathetic dystrophy[1] ("RSD") in her lower left leg. (Rec. 343.) She uses a transcutaneous

---

[1] RSD is also known as Complex Regional Pain Syndrome and is "a chronic pain syndrome most often resulting from trauma to a single extremity. . . . The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." SSR 02-03p.

electrical nerve simulator (TENS unit) all day every day, which is intended to help reduce her pain. (Rec. 24.) Plaintiff also takes Percocet and uses Lidoderm and Clonidine patches for her pain. (Rec. 12-13.) Aside from this pain medication, Plaintiff takes Cyclobenzaprine for muscle spasms, Ambien for sleep, and hormone replacement therapy. (*Id*.) The side effects of her medication include weight gain, swelling, dizziness, loss of appetite, nausea, vomiting, constipation, and diarrhea. (Rec. 12-13.)

Plaintiff's mobility is significantly limited by her RSD. She has used a four-legged walker that she refers to as a "Rollator" since 2008. (Rec. 15.) She is unable to walk or stand for long periods as she loses control of her leg and gets muscle spasms. (Rec. 19-20.)

Plaintiff has experienced intermittent periods of dizziness and light-headedness since 2003. (Rec. 34.) She was diagnosed with vasovagal syncope[2] in April 2009. (Rec. 896.)

**B.   Prior Proceedings**

On May 10, 2007, Plaintiff filed an application for Social Security Disability Insurance Benefits which alleged that she has been disabled since September 27, 2006. (Rec. 62.) The Social Security Administration denied Plaintiff's claim and she filed a written request for a hearing before an ALJ. (*Id*.)

---

[2] The Social Security Administration consider syncope to be "a loss of consciousness" and near syncope to be "a period of altered consciousness". SSA Listing 4.00(F)(3)(c).

ALJ Michael G. Heitz held a hearing on October 21, 2009. (Rec. 62.) Plaintiff was represented by counsel at the hearing. (Rec. 6.) The only witnesses that testified were Plaintiff and a vocational expert ("VE"). (Rec. 6-51.)

On January 20, 2010, the ALJ issued his Notice of Decision which found that Plaintiff was not disabled. (Rec. 59-79.) Following the five-step sequential process[3], the ALJ first found that Plaintiff had not worked during the alleged period of disability. (Rec. 65.) At step two, the ALJ found that Plaintiff had the following severe impairments: RSD of the left lower extremity, obesity, abdominal pain, and syncope. (*Id.*) At step three, the ALJ found that these impairments—individually or collectively—did not meet or medically equal a listed impairment. (Rec. 66.) With respect to Plaintiff's residual functional capacity ("RFC")[4], the ALJ found that she

> must avoid climbing ladders and scaffolds, ambulating over uneven surfaces, operating left leg controls, exposure to extreme cold and open moving machinery, and having to travel to different work sites; can lift and carry five pounds

---

[3] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] The RFC is an assessment of the most a claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). The RFC assessment is made by the ALJ "based on all the relevant evidence in [the claimant's] case record." *Id.* Examples of the types of evidence required to be considered in making an RFC assessment are the claimant's medical history, medical signs and laboratory findings, and medical source statements. Soc. Sec. Ruling (SSR) 96-8p (July 2, 1996).

> frequently and 10 pounds occasionally; can occasionally stoop, but should avoid kneeling and crawling; can sit for at least one hour at a time and a total of six to eight hours in an eight-hour workday; can stand/walk for no more than 10 minutes at a time and a total of two hours in an eight-hour workday, and she requires the assistance of a quad cane when on her feet.

(Rec. 66.) Based on this RFC and the VE's testimony at the hearing, at step four, the ALJ found that Plaintiff is capable of performing her past work experience as a personnel clerk, court clerk, and a production coordinator. (Rec. 71.) The ALJ concluded that, because Plaintiff could perform her prior work, she was not disabled for purposes of the Act. (Rec. 71.)

Plaintiff appealed the ALJ's determination to the Social Security Appeals Council but it found no reason to review the decision. (Rec. 53.) Thus, Plaintiff initiated this action.

### III.  ANALYSIS

In challenging the ALJ's denial of benefits, Plaintiff raises three arguments: (1) the ALJ erred in not considering whether her impairments met the listing for recurrent arrhythmias; (2) the hypothetical questions posed by the ALJ to the VE did not encompass all of her impairments; and (3) the ALJ erred by not inquiring further of Plaintiff's treating physician in accordance with SSR 03-02p. (ECF No. 10 at 10-13.) The Court will address each of these arguments in turn below.

**A.      Failure to Consider Listing for Recurrent Arrhythmia**

At step three, an ALJ must determine whether a claimant's impairments meet or

medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, subpart P, Appendix 1.  See 20 C.F.R. § 404.1520(d).  Plaintiff argues that the ALJ erred at step three because he did not consider whether Plaintiff's impairments met or medically equaled Listing 4.05, which provides:

> 4.05 Recurrent arrhythmias, not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled (see 4.00A3f), recurrent (see 4.00A3c) episodes of cardiac syncope or near syncope (see 4.00F3b), despite prescribed treatment (see 4.00B3 if there is no prescribed treatment), and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope (see 4.00F3c).

Plaintiff contends that the ALJ should have considered this listing because Plaintiff's results from a "tilt-table test . . . document the relationship between Plaintiff's syncope and near syncope and her symptoms of arrhythmia."  (ECF No. 10 at 12.)

The Social Security Regulations provide that Listing 4.05 applies only when a claimant has "arrythmias that are not fully controlled by medication, an implanted pacemaker, or an implanted cardiac defibrillator <u>and</u> you have uncontrolled recurrent episodes of syncope or near syncope."  Listing 4.00(F)(3)(c) (emphasis added).  While there is evidence that Plaintiff suffered from recurrent episodes of syncope, there is no evidence that she had uncontrolled arrythmias.  In fact, Plaintiff's EKG performed in March 2007 did "not show any irregular or abnormal rhythm that would cause [Plaintiff] to pass out. [Plaintiff's] heart is okay."  (Rec. 1695.)

Additionally, in order for Listing 4.05 to apply, "there must be a documented

association between the syncope or near syncope and the recurrent arrhythmia." Listing 4.00(F)(3)(c). Plaintiff has failed to point to any evidence showing a link between her syncope or near syncope and any arrhythmia. In fact, Plaintiff's brief suggests that her dizziness is caused by the medication that she takes. (ECF No. 10 at 6 ("Ms. Whatley also experiences dizziness from the medication on a daily basis.").)

Plaintiff has cited no evidence in the record suggesting that she suffered from recurrent arrhythmias or that any such arrhythmia was linked to her syncope or near syncope. Thus, the ALJ's failure to consider Listing 4.05 was not error.

**B.      Hypothetical Questions Posed to VE**

At Plaintiff's hearing, the ALJ posed a number of hypothetical questions to the VE. (Rec. 47-50.) Plaintiff argues that these questions were erroneous because they did not incorporate the symptoms of Plaintiff's syncope and near syncope. (ECF No. 10 at 12.) Specifically, Plaintiff argues that the ALJ erred because he did not ask the VE "whether a period of altered consciousness, fainting, light-headedness, momentary weakness or dizziness would effect the Plaintiff's ability to perform any of her past relevant work." (*Id.* at 13.)

Initially, the Court notes that Plaintiff fails to cite anywhere in the record showing that she actually suffered from all of these symptoms. There is evidence that she experiences dizziness and light-headedness on a regular basis. (Rec. 560, 862-64, 1392.) But Plaintiff has failed to cite any evidence of fainting or periods of altered consciousness.

An ALJ's hypothetical questions need only include such limitations as are borne out by the evidentiary record. *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995); *see also Jordan v. Heckler*, 835 F.2d 1314, 1317 (10th Cir. 1987) ("The ALJ is only required to ask hypotheticals encompassing impairments that find support in the record."). At the hearing, the ALJ asked the VE to assume that the individual at issue could not climb ladders or scaffolds, should not work in unprotected heights or around open moving machinery, and should be seated most of the day. (Rec. 47-48.) These restrictions take into account the symptoms of syncope that Plaintiff actually experienced. Therefore, the Court finds that the ALJ's hypothetical questions were not erroneous.

**C.      Failure to Request More Information in Accordance with SSR 03-02p**

At step two, the ALJ found that Plaintiff's RSD was a severe impairment. The Social Security Agency has issued a Policy Interpretation Ruling for cases involving RSD and/or Complex Regional Pain Syndrome. *See* SSR 03-02p. SSR 03-02p states that, in evaluating a disability claim based on RSD, an ALJ should generally obtain evidence from the 12-month period preceding the application. *Id*. "If the adjudicator finds that the evidence is inadequate to determine whether the individual is disabled, he or she must first recontact the individual's treating or other medical source(s) to determine whether the additional information needed is readily available, in accordance with 20 C.F.R. 404.1512 and 416.912."

Plaintiff argues that the ALJ erred because "[n]o where in the decision of the Administrative Law Judge is it noted that SSR 03-02p was considered." (ECF No. 10 at

13.)  It appears the Plaintiff is arguing that the ALJ's failure to explicitly mention SSR 03-02p is erroneous.  (*Id.*)  However, Plaintiff has no authority for this position.  The two cases cited by Plaintiff do not stand for the proposition that an ALJ must explicitly mention SSR 03-02p in every case involving RSD.  One of the cited cases involves the failure to identify RSD as an impairment, and the other involves whether the ALJ properly considered the claimant's pain.  In this case, the ALJ's decision incorporates many aspects of SSR 03-02p; it is not error for the ALJ to fail, in addition, to explicitly cite the referenced regulation.

Plaintiff also contends that the ALJ erred because he did not seek clarification on Plaintiff's medical history from Plaintiff's treating physician.  (ECF No. 10 at 14.)  However, an ALJ is required to inquire of a claimant's treating physician only if there is not sufficient evidence to make a disability determination.  *See* SSR 03-02p.  Here, Plaintiff supplied over a thousand pages of medical records.  The ALJ's Notice of Decision thoroughly recounts much of this evidence.  There is no indication that the ALJ felt he needed more evidence (from Plaintiff's primary care provider or anyone else) in order to make his disability determination.

Plaintiff points out that, despite the ALJ's failure to request more information from her primary care physician, her primary care physician "clarif[ied]" his opinions in a letter provided to the ALJ after the hearing.  (Rec. 1997.)  This letter states that Plaintiff "can no longer participate in her job duties due to her disability and the medications she has to take to manage her condition.  She should not be climbing ladders or kneeling.

Walking should be kept to thirty-three percent (33%) or less or her time.  Mrs. Whatley continues to be disabled from her job."  (*Id.*)

Plaintiff fails to explain how this "clarification" from her primary care physician should have affected the ALJ's analysis and his finding that Plaintiff was not disabled.  (ECF No. 10 at 14-15.)  The ALJ is not required to defer to a medical doctor's opinion as to whether a claimant is disabled.  *See* 20 C.F.R. § 404.1527(e)(2) (stating that the ALJ is responsible for making findings of fact and conclusions of law regarding disability); *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) ("A treating physician may also proffer an opinion that a claimant is totally disabled.  That opinion is not dispositive because the final responsibility for determining the ultimate issue of disability is reserved to the Commissioner."); *Cole v. Barnhart*, 293 F. Supp. 2d 1234, 1240 (D. Kan. 2003) ("The Commissioner is not bound to accept the conclusion of Plaintiff's physician on the ultimate fact of disability.").  Therefore, while of some probative value, Plaintiff's treating physician's comment that he believed she was disabled is not dispositive of the ultimate issue in this case.

Moreover, the limitations noted by Plaintiff's treating physician in his follow-up letter are fully consistent with the limitations found by the ALJ in his RFC.  The RFC provides that Plaintiff cannot climb ladders or scaffolds, should avoid kneeling and crawling, and can stand/walk not more than two hours in an eight hour work day.  (Rec. 66.)  The ALJ included these restrictions in his hypothetical questions posed to the VE, and the VE testified that Plaintiff could return to her former sedentary positions as a

personnel clerk, court clerk, or production coordinator.  (*Id*. at 71.)  Therefore, the Court finds that there was substantial evidence in the record to support the ALJ's finding that Plaintiff was not disabled, despite Plaintiff's treating physician's opinion that she was.

"Claims where the [claimant] asserts RSD are adjudicated using the sequential evaluation process, just as for any other impairment."  SSR 03-02p.  Here, the ALJ followed the sequential evaluation process, including considering many of the issues raised in SSR 03-02p, and found that the Plaintiff was not disabled at step four because she could return to her prior work.  Having reviewed the arguments of the parties and the significant record presented in this case, the Court finds that there is substantial evidence to support the ALJ's decision.

## IV.  CONCLUSION

For the reasons set forth above, the Court AFFIRMS the ALJ's Notice of Decision denying Plaintiff's application for disability benefits, and judgment shall enter in accordance with this Order.  Each party shall bear her or its own costs and fees.

Dated this 27th day of August, 2012.

BY THE COURT:

_____
William J. Martinez
United States District Judge
